# ATTACHMENT

# A

*Redacted Docket Materials*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR )
AN ORDER PURSUANT TO )
18 U.S.C. § 2703(d) )
)

Case: 1:16-mc-01080
Assigned To : Kay, Alan
Assign. Date : 5/17/2016
Description: Misc.

**Filed Under Seal**

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its attorney, the United States

Attorney for the District of Columbia, respectfully submits under seal this *ex parte* application

for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require Yahoo! Inc.,

("Yahoo"), located at 701 First Avenue, Sunnyvale, California, to disclose certain records and

other information pertaining to user accounts:



as described in Part I of Attachment A. The records and other information to be

disclosed are described in Part II of Attachment A to the proposed Order. In support of this

application, the United States asserts:

## LEGAL BACKGROUND

1. Yahoo is a provider of an electronic communications service, as defined in 18

U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require Yahoo to

disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of

1

Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically, the Court is a District Court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under Section 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The United States government is investigating, inter alia, the potential offense of money laundering, in violation of Title 18, United States Code, Section 1956. ██████████



████████████████████ is acting as ████████████████████ ████████████ Financial records have revealed that ██████ has transferred money to multiple individuals in the U.S. Money remitters that operate in the United States must register with the Financial Crimes Enforcement Network (FinCEN). *See* 18 U.S.C. § 1960. ████████████ has not registered with FinCEN.

5. Many of ██████ transfers of funds to the U.S. display indications of a money transmission and money laundering operation. Law enforcement has introduced ████████████ ████████████████████ has had numerous conversations with ██████████████. The

2

 representatives have indicated that they can move large sums of money, up to ▮▮▮▮▮ into the Washington, D.C. area. ▮▮▮▮▮ has implied that the funds involved in the transactions come from an illegal source. ▮▮▮ has made no attempt to conduct the requisite due diligence of the client. This proposed transaction by ▮▮▮▮▮ violates 18 U.S.C. § 1956 and 31 U.S.C. § 5318(g), which requires ▮▮▮▮▮▮▮▮▮▮ Law enforcement is aware that criminals use exchange houses, such ▮▮▮ to transfer money while anonymizing the transfer of funds. Doing so allows criminal to conceal their illicit activities, their identities, and the source and nature of the funds involved in the transactions.

6. Many of ▮▮▮ transfers of funds into the U.S. are consistent with a money laundering operation. For example, from ▮▮▮▮▮▮ sent multiple payments to individuals in ▮▮▮▮▮ totaling approximately ▮▮▮▮▮ sent these bank transactions directly, and did not disclose the counterparty of the transactions. ▮▮▮ indicated on the wire detail that these transactions were for ▮▮▮▮ Law enforcement has been unable to identify any ▮▮▮▮ related to these payments. ▮▮▮ additionally sent a similar uncategorized payment to ▮▮▮▮▮▮▮ omission of the counterparty to this transaction makes their business highly susceptible to individuals seeking to remain anonymous while engaging in ▮▮▮▮▮▮ Law enforcement is aware that one of the primary means of trade based money laundering involves ▮▮▮▮▮ ▮▮▮▮

7. ▮▮▮ additionally sent hundreds of thousands of dollars to multiple individuals in ▮▮▮▮ Of particular concern, ▮▮▮ sent one individual in ▮▮▮▮▮▮ ▮▮▮▮▮▮▮

Law enforcement is aware that persons receiving illicit funds often structure their cash

withdrawals in amounts of less than ▮▮▮▮▮ in order to avoid the generation of a Currency Transaction Report. The transfer of funds here appears to facilitate the unknown individuals attempt to transact in funds under the reporting requirement. Such activities, known as structuring, are unlawful, pursuant to 31 U.S.C. § 5324.

8. ▮▮▮▮▮▮▮▮▮ maintains a publicly available list of Exchange Companies that have registered with the bank, which includes a company using the trade name ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ is the legal name of ▮▮▮▮▮▮ in the registry, and the business is identified as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ Law enforcement believes ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9. ▮▮▮▮▮▮ is listed twice on this list. One listing appears to be for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is associated in the listing with the main location for ▮▮▮▮▮▮▮▮▮ listed in the directory lists the same phone number which is listed on the ▮▮▮▮▮ Law enforcement believes the ▮▮▮▮▮ is a name variant of ▮▮▮▮▮ based on similar name and the use of a common phone number. Law enforcement further believes that these companies are in fact one in the same.

### Target Accounts

- ▮▮▮▮▮▮▮ - An individual named ▮▮▮▮▮▮▮, attempted to travel to the United States in ▮▮▮▮▮▮▮ On his VISA application, he listed ▮▮▮▮▮▮▮▮ He listed

4



███████████ as his contact information on this VISA application. As noted above, law enforcement believes that ███████████ is one of the owners of ████ .

- ███████████████████ publicly listed this email address on a ███████████ company profile page in a ███████████████ . The posting identified ███ as a money exchange business located in ████ As noted above, law enforcement believes that ██████ is one of the owners of ███

- ███████████████ also listed this email address on another ███████████ , which is also publically available on the internet.

- ███████████████ - An online business directory lists this email address as a contact address for ███████████ As noted above, law enforcement believes that ███████████ is the legal name for ███ Moreover, the name of this account appears to be consistent with ███████ ███████ .

10.     Law enforcement believes individuals are conspiring with members of ████ ████ to launder money into the United States, as well as operate an unlicensed money service business. Obtaining the metadata for the target email addresses will allow law enforcement to further investigate these illegal activities.

11.     Based on prior investigations, law enforcement is aware that criminal co-conspirators, as well as businesspersons, communicate frequently through email and private messages about their legitimate and illegitimate businesses and the transfer of proceeds from such businesses. Private messages and email offer a uniquely valuable form for such

5

communication, as they can be accessed from any location. Many such persons believe that such messages are difficult to trace, which leads them to have inculpatory conversations.

12. Law enforcement is further aware that persons operating international money laundering operations typically communicate electronically (including via email, Facebook, and other social media platforms) with persons funding their operations, due to the time differences as well as limited phone access in remote tribal areas. When transferring funds to co-conspirators, electronic communications will normally occur to inform the other party that the money has been sent, followed up by communications that the money has been received. Law enforcement is also aware that subordinates in the management chain must communicate to their superiors to report the status of their illegal tasks as well as to receive new illegal tasks.

13. The header information of these communications will reveal the scope of the contacts between the money launderers and identify their co-conspirators. Learning the header information from the Target Accounts is likely to reveal co-conspirators within this network, as well as further identify the users of the Target Accounts. This information is relevant and material to criminal proceedings against ▮▮▮▮▮ and co-conspirators.

## REQUEST FOR ORDER

14. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Accordingly, the United States requests that Provider be directed to produce all items described in Part II of Attachment A to the proposed Order.

15. The United States further requests that the Order require Provider not to notify any person, including the subscriber or customer of the account listed in Part I of Attachment A,

6

of the existence of the Order for a period of 180 days or until further order of the Court. The

Stored Communications Act ("SCA"), Title 18, United States Code, Sections 2701-2712,

expressly authorizes the government to seek a court order directing the provider not to notify any

other person of the existence of the Order directed to it. Section 2705(b) provides in pertinent

part:

> A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), . . . may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—
>
> (1)    endangering the life or physical safety of an individual;
> (2)    flight from prosecution;
> (3)    destruction of or tampering with evidence;
> (4)    intimidation of potential witnesses; or
> (5)    otherwise seriously jeopardizing an investigation or unduly delaying a trial.

16.     In this Application, the United States is acting under subsections 2703(c) and (d).

Accordingly, the government is not required to provide notice to a subscriber or customer of the

Application or the Order. 18 U.S.C. § 2703(c)(3). This Court is therefore authorized to issue a

non-disclosure Order to Provider pursuant to section 2705(b). In this case, such an order would

be appropriate because the requested Order relates to an ongoing criminal investigation that is

not public, and its disclosure may alert the targets to the ongoing continuing investigation and the

government's efforts to locate and arrest them. Accordingly, there is reason to believe that

notification of the existence of the requested Order will seriously jeopardize the investigation,

including by endangering the life or physical safety of an individual, including the UC, giving

targets an opportunity to flee or continue flight from prosecution, destroy or tamper with

7

evidence, intimidate potential witnesses in, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(1)-(5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

17. The government is seeking records of the target accounts from the inception of the account through the present date. The target accounts appear to be directly related to a front business that launders funds without doing the required due diligence. As such, all email accounts relating to the front business are relevant and material to the ongoing investigation. Primarily, records within that date range may allow law enforcement to better determine the identity of the account holder. Additionally, such information may also reveal whether the target account was created as a sham "alias" account or whether it ever corresponded to a real individual, and/or whether the account has ever been hacked or otherwise misappropriated from its original user by a third party to be used for illegal purposes; in such cases learning the header information could provide exculpatory information for the creator of target account. Such records may also be relevant and material to the investigation by providing information about the user's long-term patterns of communication and relationships with other persons, including potential co-conspirators, both before and after the illicit activity began.

Request for Sealing Order

18. In this matter, the government also requests that the instant Application and the Order be filed under seal. The Court has the inherent power to seal court filings when appropriate, including the 2703(d) Order. *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). More particularly, the Court may seal the Application and Order to prevent serious jeopardy to an

8

ongoing criminal investigation when, as in the present case, such jeopardy creates a compelling governmental interest in preserving the confidentiality of the Application and order. *See Washington Post v. Robinson*, 935 F.2d 282, 287-89 (D.C. Cir. 1991). Because of the potential jeopardy to the present investigation that would result from disclosure of the Application and order, there exists a compelling governmental interest in confidentiality to justify the government's sealing request. *See Robinson*, 935 F.2d at 287-89.

Respectfully submitted,

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY

By:          /s/
ZIA M. FARUQUI, D.C. Bar No. 494990
Assistant United States Attorney
555 Fourth Street, N.W., Room 4806
Washington, D.C. 20530
(202) 252-7117
Zia.Faruqui@usdoj.gov

9

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

```
                                    )
IN RE APPLICATION OF THE            )
UNITED STATES OF AMERICA FOR        )    MISC. NO.
AN ORDER PURSUANT TO                )
18 U.S.C. § 2703(d)                 )
                                    )    Filed Under Seal
_____    )
```

ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2703(d),

requesting that the Court issue an Order requiring Yahoo! Inc., ("Yahoo"), located at 701 First

Avenue, Sunnyvale, California, to disclose the records and other information described in

Attachment A to this Order.

The Court finds that the United States has offered specific and articulable facts showing

that there are reasonable grounds to believe that the records or other information sought are

relevant and material to an ongoing criminal investigation.

The Court determines that there is reason to believe that notification of the existence of

this Order will seriously jeopardize the ongoing investigation, including by endangering the life

or physical safety of cooperating individual(s) and the UC, allowing for the intimidation of

witness(es), giving targets an opportunity to flee or continue flight from prosecution, destroy or

tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C.

§ 2705(b)(1)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that Facebook shall,

within ten days of the date of this Order, disclose to the United States the records and other

information described in Attachment A to this Order.

1

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that Yahoo shall not disclose the existence of the application of the United States, or the existence of this Order of the Court, to the subscribers of the account listed in Attachment A, or to any other person, for a period of 180 days, except that Yahoo may disclose this Order to an attorney for Yahoo for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

_____
HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

_____
Date

2

## ATTACHMENT A

### I.    The Accounts

The Order applies to certain records and other information for any Yahoo! account associated with the following identifiers, and any accounts linked thereto by recovery email address, telephone number, cookies, or any other unique device or user identifier:

### II.    Records and Other Information to Be Disclosed

Provider is required to disclose to the United States, if available, the following records and other information for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by recovery email address, telephone number, cookies, or any other unique device or user identifier ("Linked Accounts"), for the time period from account inception to the present.

A.    The following information about the customers or subscribers of the Accounts

### A.    The following information about the customers or subscribers of the Accounts:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses);

1

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number).

## B. For the Account, but not for Linked Accounts, all records and other information relating thereto (except the contents of communications):

1. Information about each communication sent or received by the Account (for example, tweets, followers, and any other messages), including the date, time, and method of communication; source and destination information (including account identifiers and IP addresses), and any other header or routing information;

2. Information about each connection made to or from the Account, including the date, time, length, and method of connection; server log records; data transfer volume; source and destination IP addresses; and all unique device or user identifiers;

3. Information about each device registered with or used to access the Account, including the date, time, and length of usage; device registration information; hardware model; operating system version; mobile network information; any known country, language, or time zone settings; and all unique device or user identifiers; and

As used herein, "unique device or user identifier" refers to any unique number or set of characters that may be used by Twitter to identify or track users or devices, including any cookies used by or known to Twitter, Advertising ID, Global Unique Identifier ("GUID"), Universally Unique Identifier ("UUID"), device serial number, Media Access Control ("MAC") address, Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Module ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifier ("IMSI"), and International Mobile Equipment Identity ("IMEI").

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Yahoo, and my official title is

_____. I am a custodian of records for Yahoo. I state that each of

the records attached hereto is the original record or a true duplicate of the original record in the

custody of Yahoo, and that I am the custodian of the attached records consisting of _____

(pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business

activity of [Yahoo]; and

c.      such records were made by Yahoo as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____          _____
Date                               Signature

3

FILED

MAY 1 8 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR )
AN ORDER PURSUANT TO )
18 U.S.C. § 2703(d) )
)
)

Case: 1:16-mc-01080
Assigned To : Kay, Alan
Assign. Date : 5/17/2016
Description: Misc.

**Filed Under Seal**

ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2703(d),

requesting that the Court issue an Order requiring Yahoo! Inc., ("Yahoo"), located at 701 First

Avenue, Sunnyvale, California, to disclose the records and other information described in

Attachment A to this Order.

The Court finds that the United States has offered specific and articulable facts showing

that there are reasonable grounds to believe that the records or other information sought are

relevant and material to an ongoing criminal investigation.

The Court determines that there is reason to believe that notification of the existence of

this Order will seriously jeopardize the ongoing investigation, including by endangering the life

or physical safety of cooperating individual(s) and the UC, allowing for the intimidation of

witness(es), giving targets an opportunity to flee or continue flight from prosecution, destroy or

tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C.

§ 2705(b)(1)-(5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that Facebook shall,

within ten days of the date of this Order, disclose to the United States the records and other

information described in Attachment A to this Order.

1

N

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that Yahoo shall not disclose

the existence of the application of the United States, or the existence of this Order of the Court,

to the subscribers of the account listed in Attachment A, or to any other person, for a period of

180 days, except that Yahoo may disclose this Order to an attorney for Yahoo for the purpose of

receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until

otherwise ordered by the Court.

_____
HON. DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE
DISTRICT

5/17/16
_____
Date

2

## ATTACHMENT A

### I. The Accounts

The Order applies to certain records and other information for any Yahoo! account associated with the following identifiers, and any accounts linked thereto by recovery email address, telephone number, cookies, or any other unique device or user identifier:

███████████████████

### II. Records and Other Information to Be Disclosed

Provider is required to disclose to the United States, if available, the following records and other information for each account or identifier listed in Part I of this Attachment ("Account"), and for any account linked to such account or identifier by recovery email address, telephone number, cookies, or any other unique device or user identifier ("Linked Accounts"), for the time period from account inception to the present.

A.    The following information about the customers or subscribers of the Accounts

**A.    The following information about the customers or subscribers of the Accounts:**

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses);

1

7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8. Means and source of payment for such service (including any credit card or bank account number).

**B. For the Account, but not for Linked Accounts, all records and other information relating thereto (except the contents of communications):**

1. Information about each communication sent or received by the Account (for example, tweets, followers, and any other messages), including the date, time, and method of communication; source and destination information (including account identifiers and IP addresses), and any other header or routing information;

2. Information about each connection made to or from the Account, including the date, time, length, and method of connection; server log records; data transfer volume; source and destination IP addresses; and all unique device or user identifiers;

3. Information about each device registered with or used to access the Account, including the date, time, and length of usage; device registration information; hardware model; operating system version; mobile network information; any known country, language, or time zone settings; and all unique device or user identifiers; and

   As used herein, "unique device or user identifier" refers to any unique number or set of characters that may be used by Twitter to identify or track users or devices, including any cookies used by or known to Twitter, Advertising ID, Global Unique Identifier ("GUID"), Universally Unique Identifier ("UUID"), device serial number, Media Access Control ("MAC") address, Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Module ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifier ("IMSI"), and International Mobile Equipment Identity ("IMEI").

2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Yahoo, and my official title is _____. I am a custodian of records for Yahoo. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Yahoo, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.  such records were kept in the ordinary course of a regularly conducted business activity of [Yahoo]; and

c.  such records were made by Yahoo as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____     _____
Date                        Signature

3